IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| CHRISTOPHER J. McCARTHY and JAMES CROSS, On Behalf of Themselves and All Others Similarly Situated, | § § § § | |
| Plaintiffs, | § § | |
| V. | § § | CIVIL ACTION NO. 5:15-cv-00747 |
| JM OILFIELD SERVICES, INC. | § § | JURY TRIAL DEMANDED |
| Defendant. | § § | COLLECTIVE AND CLASS ACTION |

## PLAINTIFFS' ORIGINAL COMPLAINT

Plaintiffs CHRISTOPHER J. McCARTHY ("McCarthy") and JAMES CROSS ("Cross") (collectively "Plaintiffs") on behalf of themselves and all others similarly situated, file this Original Complaint against JM OILFIELD SERVICES, INC. ("JM Oilfield" or "Defendant"), showing in support as follows:

## I.   NATURE OF THE ACTION

1.     Plaintiffs bring this action pursuant to the Worker Adjustment and Retraining Notification Act of 1988, 29 U.S.C. §§ 2101-2109 *et seq.*, (the "WARN Act"), the federal Fair Labor Standards Act, 29 U.S.C. §§ 201-219, and the federal Portal-to-Portal Pay Act, 29 U.S.C. §§ 251-262, (collectively "FLSA") for Defendant's: (a) failure to pay Plaintiffs time and one-half their regular rate of pay for all hours worked over 40 during each seven day workweek; and (b) failure to pay Plaintiffs at least the FLSA minimum hourly wage rate for all hours worked in a workweek.

2.     Plaintiffs bring this action under the WARN Act for Defendant's failure to give the required WARN Act written notice to Plaintiffs and similarly situated former employees

("WARN Class Members") in connection with Defendant's recent Mass Layoff and/or Plant Closing at Defendant's Gonzales, Texas and/or Three Rivers, Texas, and Quitman, Arkansas sites of employment at/from/through which Plaintiffs and WARN Class Members were employed during the relevant time period.

3.      Defendant is liable under the WARN Act for its failure to provide Plaintiffs and WARN Class Members at least 60 days' advance written notice of termination, as required by the WARN Act. These employees are similarly-situated under the class action provisions of Federal Rule of Civil Procedure 23 ("Rule 23").

4.      Plaintiffs and WARN Class Members seek to recover up to 60 days' wages and benefits pursuant to 29 U.S.C. § 2101 from Defendant.

5.      Plaintiffs also brings this action as a FLSA collective action on behalf of themselves and similarly situated individuals ("Collective Action Members") for Defendant's FLSA violations. Plaintiffs and Collective Action Members are or were oilfield short haul trucking crew workers and support staff employed by Defendant. Collective Action Members include (1) all employees who were not paid at least the FLSA minimum hourly wage rate for all hours worked in a workweek; and (2) all hourly-paid non-exempt employees of Defendant who were not paid time and one-half their respective regular rates of pay for all hours worked over 40 in each seven day workweek in the time period of three years preceding the date this lawsuit was filed and forward.

6.      Plaintiffs and the collective action members seek all damages available under the FLSA, including back wages, liquidated damages, legal fees, costs, and post-judgment interest.

## II.     THE PARTIES, JURISDICTION, AND VENUE

### A.     Plaintiff Christopher J. McCarthy

7.     McCarthy is a natural person who resides in Live Oak County, Texas. He has standing to file this suit.

8.     McCarthy was employed by Defendant as an oilfield short haul trucking crew worker, and he worked for Defendant providing short haul trucking support on various oilfield locations including significant work in and around Gonzales, Texas and Three Rivers, Texas.

9.     McCarthy was not paid for all time he worked for Defendant. When McCarthy attempted to collect his unpaid wages from Defendant, the current owner of JM Oilfield, James Boston, informed him that he would likely never be paid those wages.

10.     McCarthy's employment with Defendant was verbally terminated without any advance written warning on or about August 31, 2015 ("McCarthy's Employment Loss").

11.     McCarthy brings his claims on behalf of himself and the Collective Action and WARN Class Members.

### B.     Plaintiff James Cross

12.     Cross is a natural person who resides in White County, Arkansas.

13.     Cross was employed by Defendant as an oilfield short haul trucking crew worker, and he worked for Defendant providing short haul trucking support on various oilfield locations including significant work in and around Quitman, Arkansas.

14.     Cross's employment with Defendant was verbally terminated without any advance written warning on or about August 31, 2015 ("Cross's Employment Loss").

15.     Cross brings his claims on behalf of himself and the Collective Action and WARN Class Members.

C.     **WARN Class Members**

16.     There are two distinct classes/sub-classes in this lawsuit – the Gonzales and/or Three Rivers, Texas Class Members who are/were employees of Defendant at Defendant's single site(s) of employment at Gonzales, Texas and/or Three Rivers, Texas, and the Quitman, Arkansas Class Members who are/were employees of Defendant at Defendant's single site of employment at Quitman, Arkansas single site of employment. Collectively the Gonzales and/or Three Rivers, Texas Class members and the Quitman, Arkansas Class Members are referred to as the "Class Members."

17.     Joinder of the claims of the Plaintiffs and Class Members is appropriate in this action pursuant to Federal Rule of Civil Procedure 20(a)(1) as Plaintiffs and the Class Members assert claims for relief jointly, severally, or in the alternative arising out of the same transaction or occurrence, or series of transactions or occurrences in connection with the Mass Layoffs and/or Plant Closings made the subject matter of this lawsuit. There are questions of law and/or fact common to claims of the Plaintiffs and Class Members.

1.     **Gonzales and/or Three Rivers, Texas Class Members**

18.     The Gonzales and/or Three Rivers, Texas Class Members are affected employees who are similarly situated to McCarthy, and who were or may reasonably be expected to experience an employment loss due to termination of employment as a consequence of Defendant's Mass Layoff at Defendant's Gonzales, Texas and/or Three Rivers, Texas site(s) of employment in the 30 day or 90 day period from McCarthy's Employment Loss.

19.     Alternatively, the Gonzales and/or Three Rivers, Texas Class Members are affected employees who are similarly situated to McCarthy, and who were or may reasonably be expected to experience an employment loss due to termination of employment as a consequence

of Defendant's Plant Closing at Defendant's Gonzales, Texas and/or Three Rivers, Texas site(s) of employment in the 30 day or 90 day period from McCarthy's Employment Loss.

20.     On information and belief, the single site of employment for purposes of the WARN Act is Defendant's principal place of business in Gonzales, Texas and/or Three Rivers, Texas.

21.     Alternatively, should discovery reveal that there is more than one single site of employment for McCarthy and the Gonzales and/or Three Rivers, Texas Class Members, Plaintiffs reserve the right to modify the class definition or establish sub-classes in connection with any amended pleading and/or motion for class certification.

### 2.  Quitman, Arkansas Class Members

22.     The Quitman, Arkansas Class Members are affected employees who are similarly situated to Cross, and who were or may reasonably be expected to experience an employment loss due to termination of employment as a consequence of Defendant's Mass Layoff at Defendant's Quitman, Arkansas site(of employment in the 30 day or 90 day period from Cross's Employment Loss.

23.     Alternatively, the Quitman, Arkansas Class Members are affected employees who are similarly situated to Cross, and who were or may reasonably be expected to experience an employment loss due to termination of employment as a consequence of Defendant's Plant Closing at Defendant's Quitman, Arkansas site(s) of employment in the 30 day or 90 day period from Cross's Employment Loss.

24.     On information and belief, the single site of employment for purposes of the WARN Act is Defendant's principal place of business in Quitman, Arkansas.

25.     Alternatively, should discovery reveal that there is more than one single site of employment for Cross and the Quitman, Arkansas, Plaintiffs reserve the right to modify the class definition or establish sub-classes in connection with any amended pleading and/or motion for class certification.

### D.     FLSA Collective Action Members

26.     The putative FLSA Collective Action Members are (1) all employees who were not paid at least the FLSA minimum hourly wage rate for all hours worked in a workweek; and (2) all hourly-paid non-exempt employees of Defendant who were not paid time and one-half their respective regular rates of pay for all hours worked over 40 in each seven day workweek in the time period of three years preceding the date this lawsuit was filed and forward.

27.     While their precise job duties might vary somewhat as oilfield short haul trucking crew workers and support staff employed by Defendant (*e.g.* truck drivers, truck pushers, roustabouts, and mechanics, etc.) those differences do not matter for purposes of determining their entitlement to overtime pay. Because Defendant did not pay all overtime premium compensation to its hourly oilfield worker employees who routinely worked in excess of 40 hours per workweek, Plaintiffs and the putative Collective Action Members are all similarly situated within the meaning of Section 216(b) of the FLSA.

28.     The relevant time period for the claims of the putative Collective Action Members is three years preceding the date this lawsuit was filed and forward.

### E.     Defendant JM Oilfield Services, Inc.

29.     On information and belief, Defendant is a foreign corporation organized under the laws of the State of Oklahoma.

30.     During all times relevant to this lawsuit, Defendant has done business in the State of Texas.

31.     On information and belief, during the time period relevant to this lawsuit, Defendant's principal place of business is and has been at or near 4 Melody Lane, Quitman, Arkansas 72131.

32.     Defendant maintains multiple district offices/yards throughout the United States from which short haul trucking crews, support personnel, supplies and equipment are based and/or dispatched in connection with support of oilfield drilling and/or pipeline projects.

33.     At all times relevant to this lawsuit, Defendant has been an "enterprise engaged in commerce" as defined by the FLSA.

34.     On information and belief, at all times relevant to this lawsuit, Defendant employed, and continues to employ, two or more employees.

35.     At all times relevant to this lawsuit, Defendant employed two or more employees who engaged in commerce and/or who handled, sold or otherwise worked on goods or materials that have been moved in or produced for commerce by any person.

36.     For example, Defendant employed two or more employees who regularly engaged in commerce in their daily work. Examples of that commerce include short haul trucking work offered/provided by Defendant to customers in Texas and states other than Texas and communications by phone, mail, and internet with customers/prospective customers in Texas and states other than Texas.

37.     Furthermore, Defendant employed two or more employees who regularly handled, sold or otherwise worked on goods and/or materials in their daily work that were moved

in and/or produced for commerce. Examples of such goods and/or materials include tools, vehicles, equipment and supplies/materials used in connection with drilling rig operations.

38.     Defendant may be served with summons through its registered agent, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, TX 75201-3136.

   **F.     <u>Jurisdiction and Venue</u>**

39.     The Court has personal jurisdiction over Defendant based on both general and specific jurisdiction.

40.     During all times relevant to this lawsuit, Defendant has done business in the State of Texas and continues to do business in the State of Texas.

41.     The Court has subject matter jurisdiction over this case based on federal question jurisdiction, 28 U.S.C. § 1331, because Plaintiffs base their claims on federal law namely the FLSA and the WARN Act.

42.     Venue is proper in the United States District Court for the Western District of Texas because a substantial part of the events giving rise to the claims in this lawsuit occurred in this judicial district. Moreover, Defendant maintains a place of business within this District.

43.     Venue is proper in the San Antonio Division of the United States District Court for the Western District of Texas because, as previously identified, Defendant maintains a place of business within the San Antonio Division (in Gonzales, Texas) and a substantial part of the events giving rise to the claims in this lawsuit occurred in the San Antonio Division.

   **III.     <u>FACTUAL BACKGROUND</u>**

44.     Plaintiffs incorporate the preceding paragraphs by reference as if set forth fully in this section.

45.     Defendant employs/employed numerous short haul trucking crew workers and support staff in connection with its business operations throughout locations in the United States that are within the scope and coverage of the FLSA. Those short haul trucking crew workers and support staff worked to provide support to oilfield drilling crews, by way of moving rigs and other heavy machinery and parts on oilfield drilling and/or pipeline locations.

46.     Defendant's business operations were based out of several yards/sites of employment in the United States. Short haul trucking crew workers and support staff worked at/from/through those yards/sites in connection with Defendant's business operations. For example, McCarthy worked at/from/through Defendant's Gonzales, Texas and Three Rivers site(s). Cross worked at/from/through Defendant's Quitman, Arkansas site.

47.     McCarthy was an hourly paid employee who worked as a truck driver supporting drilling and/or pipeline operations in and around the Eagle Ford Shale. McCarthy routinely worked in excess of 40 hours in a seven day workweek.

48.     Cross was an hourly paid employee who worked as a truck driver supporting drilling and/or pipeline operations in and around Quitman, Arkansas. Cross routinely worked in excess of 40 hours in a seven day workweek.

49.     Plaintiffs were non-exempt employees of Defendant's pursuant to the FLSA. When they worked more than 40 hours per seven day workweek, they were entitled to receive overtime premium compensation at the rate of one and one-half times his regular rate of pay for all such hours worked over 40.

50.     At times, Defendant failed to pay Plaintiffs at least $7.25 for each hour worked in a workweek and/or failed to pay Plaintiffs at least $7.25 for each and every hour worked once dividing Plaintiffs' total pay in a workweek by total hours worked in that same workweek. This

failure to pay at least $7.25 for each hour worked in a workweek and/or failure to pay at least $7.25 for each and every hour worked once dividing each Collective Action Member's total pay in a workweek by total hours worked in that same workweek at least applies/applied to Collective Action Members

51.     On information and belief, Defendant did not make and keep an accurate record of hours worked by Plaintiffs per workday and workweek. On several occasions, representative(s) of Defendant altered timesheets submitted and/or hours reported worked by McCarthy and other employees of JM Oilfield.

52.     Plaintiffs worked with numerous other short haul trucking crew workers and support staff employees of Defendant at/from/through the Gonzales, Texas and/or Three Rivers Yards and Quitman, Arkansas sites of employment. Like Plaintiffs, those employees, before, during and after Plaintiffs' dates of employment, routinely work/worked in excess of 40 hours per workweek, are/were entitled to overtime premium compensation at one and one-half times their respective regular rates of pay for all overtime hours worked, and at times, were not paid compensation for hours worked in a workweek, were not paid at least $7.25 for each hour worked in a workweek and/or were not paid at least $7.25 for each and every hour worked in a workweek once dividing each Collective Action Member's total pay in a workweek by total hours worked in that same workweek.

53.     Although Defendant has recently terminated many employees, on information and belief, it continues to employ hourly oilfield workers that are subject to the aforementioned practices/policies to not include all remuneration required by the FLSA in their respective regular rate of pay when calculating the overtime wages owed.

54.     On information and belief, and at all times material to this action, Defendant has been a business enterprise that employs 100 or more employees, excluding part-time employees and employees who have worked less than 6 months in the 12 month period preceding the first date that WARN Act notice was required to be given.

55.     Prior to the Mass Layoffs and/or Plant Closings that form the basis of this action, Defendant employed more than 100 employees, exclusive of part-time employees and employees who have worked less than 6 months in the 12 month period preceding the first date that WARN Act notice was required to be given, at each of the sites of employment made the subject matter of this lawsuit.

### A.     Gonzales and/or Three Rivers, Texas

56.     During the time period prior to McCarthy's Employment Loss, Defendant's business operations included supporting many oil and/or gas drilling and/or pipeline projects in the Eagle Ford Shale. McCarthy had a manager out of Gonzales, Texas, as well as a manager out of Three Rivers, Texas, and during the last three months of his employment with Defendant was managed jointly out of these two yards. McCarthy would be sent to a drilling site/pipeline project and would perform work there, generally moving rigs and heavy machinery and/or parts on an oilfield location but worked for Defendant out of the Gonzales, Texas and Three Rivers, Texas Yards.

57.     On information and belief, the Gonzales, Texas and/or Three Rivers, Texas Yards are/were the single site(s) of employment, as defined by the WARN Act, for employees of Defendant, such as McCarthy and the Gonzales and/or Three Rivers, Texas Class Members. Although Defendant also maintains/maintained (an)other single site(s) of employment, on information and belief, management of Defendant's Texas Eagle Ford oilfield support operations

in addition to management and administrative support of McCarthy and the Gonzales and/or Three Rivers, Texas Class members, is/was conducted at/from/through the Gonzales, Texas and/or Three Rivers, Texas single site(s) of employment.

58.     McCarthy worked with numerous other short haul trucking crew workers and support staff employees of Defendant. Like McCarthy, those workers are/were subject to Defendant's Mass Layoff and/or Plant Closing made the subject matter of this lawsuit.

59.     McCarthy was verbally notified by Defendant on or about August 31, 2015 that his employment with Defendant was terminated or that he was otherwise subject to an Employment Loss. McCarthy was not discharged for cause, did not voluntarily resign, and did not retire.

60.     On or around the time of his verbal notification of Employment Loss, McCarthy learned that numerous other similarly situated employees of Defendant suffered an employment loss.

61.     On information and belief, the employment losses at the Gonzales, Texas and/or Three Rivers, Texas site(s) of employment made the subject matter of this lawsuit occurred within a 30 day period of McCarthy's Employment Loss. Alternatively, and on information and belief, those employment losses occurred within a 90 day period of McCarthy's employment loss, such employment losses not being the result of separate and distinct actions and causes.

62.     On information and belief, 50 or more employees totaling 1/3 or more of the workforce assigned to/working out of the Gonzales, Texas and/or Three Rivers, Texas site(s) of employment made the subject matter of this lawsuit experienced employment losses during the relevant time period. On information and belief, said employment losses were not bona fide discharges for cause, voluntary departures, or retirements. On information and belief, 50 or more

of those affected employees totaling 1/3 or more of the workforce assigned to/working out of the Gonzales, Texas and/or Three Rivers, Texas site(s) of employment made the subject matter of this lawsuit had been full-time employees of Defendant for six or more months in the 12 month period preceding the date WARN Act notice was due.

63.     The exact number of employees who experienced an employment loss at the Gonzales, Texas and/or Three Rivers, Texas site(s) of employment made the basis of this lawsuit within a 30 day and 90 day period of McCarthy's employment loss is information that is only known to Defendant. Similarly, the exact number of employees employed at/from/through the Gonzales, Texas and/or Three Rivers, Texas site(s) of employment is information that is currently known only to Defendant.

64.     McCarthy and the Gonzales and/or Three Rivers, Texas Class Members were not provided with 60 days' advance written notice by Defendant of their employment loss, Mass Layoff and/or Plant Closing.

65.     McCarthy and the Gonzales and/or Three Rivers, Texas Class Members were not provided with any written notice by Defendant prior to their employment loss, Mass Layoff and/or Plant Closing.

66.     McCarthy and the Gonzales and/or Three Rivers, Texas Class Members were not provided with written notice, at any time prior to their termination, of each and every of the following items in connection with their employment loss: (a) A statement as to whether the planned action is expected to be permanent or temporary and, if the entire plant is to be closed, a statement to that effect;   (b) The expected date when the plant closing or mass layoff will commence and the expected date when the individual employee will be separated; (c) An

indication whether or not bumping rights exist; (d) The name and telephone number of a company official to contact for further information.

**B.**      **Quitman, Arkansas**

67.     During the time period prior to Cross's Employment Loss, Defendant's business operations included supporting many oil and/or gas drilling and/or pipeline projects in Arkansas. Cross would be sent to a drilling site/pipeline project and would perform work there, generally moving rigs and heavy machinery and/or parts on an oilfield location but worked for Defendant out of the Quitman, Arkansas Yard.

68.     On information and belief, the Quitman, Arkansas Yard is/was the single site of employment, as defined by the WARN Act, for employees of Defendant, such as Cross and the Quitman, Arkansas Class Members. Although Defendant also maintains/maintained (an)other single site(s) of employment, on information and belief, management of Defendant's Arkansas oilfield support operations in addition to management and administrative support of Cross and the Quitman, Arkansas Class members, is/was conducted at/from/through the Quitman, Arkansas single site(s) of employment.

69.     Cross worked with numerous other short haul trucking crew workers and support staff employees of Defendant. Like Cross, those workers are/were subject to Defendant's Mass Layoff and/or Plant Closing made the subject matter of this lawsuit.

70.     Cross was verbally notified by Defendant on or about August 31, 2015 that his employment with Defendant was terminated or that he was otherwise subject to an Employment Loss. Cross was not discharged for cause, did not voluntarily resign, and did not retire.

71.     On or around the time of his verbal notification of Employment Loss, Cross learned that numerous other similarly situated employees of Defendant suffered an employment loss.

72.     On information and belief, the employment losses at the Quitman, Arkansas site of employment made the subject matter of this lawsuit occurred within a 30 day period of Cross's Employment Loss. Alternatively, and on information and belief, those employment losses occurred within a 90 day period of Cross's employment loss, such employment losses not being the result of separate and distinct actions and causes.

73.     On information and belief, 50 or more employees totaling 1/3 or more of the workforce assigned to/working out of the Quitman, Arkansas site of employment made the subject matter of this lawsuit experienced employment losses during the relevant time period. On information and belief, said employment losses were not bona fide discharges for cause, voluntary departures, or retirements. On information and belief, 50 or more of those affected employees totaling 1/3 or more of the workforce assigned to/working out of the Quitman, Arkansas site of employment made the subject matter of this lawsuit had been full-time employees of Defendant for six or more months in the 12 month period preceding the date WARN Act notice was due.

74.     The exact number of employees who experienced an employment loss at the Quitman, Arkansas site of employment made the basis of this lawsuit within a 30 day and 90 day period of Cross's employment loss is information that is only known to Defendant. Similarly, the exact number of employees employed at/from/through the Quitman, Arkansas site of employment is information that is currently known only to Defendant.

75.     Cross and the Quitman, Arkansas Class Members were not provided with 60 days' advance written notice by Defendant of their employment loss, Mass Layoff and/or Plant Closing.

76.     Cross and the Quitman, Arkansas Class Members were not provided with any written notice by Defendant prior to their employment loss, Mass Layoff and/or Plant Closing.

77.     Cross and the Quitman, Arkansas Class Members were not provided with written notice, at any time prior to their termination, of each and every of the following items in connection with their employment loss: (a) A statement as to whether the planned action is expected to be permanent or temporary and, if the entire plant is to be closed, a statement to that effect;  (b) The expected date when the plant closing or mass layoff will commence and the expected date when the individual employee will be separated; (c) An indication whether or not bumping rights exist; (d) The name and telephone number of a company official to contact for further information.

## IV.     FIRST CLAIM FOR RELIEF: WARN ACT CLAIM(S)

78.     Plaintiffs incorporate the preceding paragraphs by reference as if set forth fully in this section.

79.     At all relevant times, Defendant was and is an employer under the WARN Act. 29 C.F.R. § 639.3(a).

80.     At material times, Defendant employed 100 or more employees, excluding part-time employees.

81.     On information and belief, Defendant's Gonzales, Texas and/or Three Rivers, Texas site(s) of employment constituted a single site of employment for McCarthy and the Gonzales and/or Three Rivers, Texas Class Members. 29 C.F.R. § 639.3(i).

*Plaintiffs' Original Complaint*                                                          Page 16

82.     On information and belief, Defendant's Quitman, Arkansas sites of employment constituted a single site of employment for Cross and the Quitman, Arkansas Class Members. 29 C.F.R. § 639.3(i).

83.     Plaintiffs maintain this action on behalf of themselves and on behalf of each other similarly situated employee.

84.     Each Gonzales and/or Three Rivers, Texas Class Member is similarly situated to McCarthy with respect to his or her rights under the WARN Act. 29 U.S.C. § 2104(a)(5).

85.     Each Quitman, Arkansas Class Member is similarly situated to Cross with respect to his or her rights under the WARN Act. 29 U.S.C. § 2104(a)(5).

A.      **Gonzales and/or Three Rivers, Texas**

1.      **Mass Layoff**

86.     During a 30 day or 90 day period from August 31, 2015, Defendant ordered/executed a "Mass Layoff" at the Gonzales, Texas and/or Three Rivers, Texas single site(s) of employment as that term is defined by the WARN Act. 29 C.F.R. §§ 639.3(c) & 639.5(a)(i).

87.     McCarthy and the Gonzales and/or Three Rivers Class Members suffered an employment loss in connection with Defendant's "Mass Layoff" made the subject matter of this lawsuit. 29 C.F.R. § 639.3(f).

88.     On information and belief, 1/3 of the employees at the single site of employment made the subject matter of this lawsuit, totaling 50 or more employees, suffered an employment loss as a result of that Mass Layoff.

89.     McCarthy and the Gonzales and/or Three Rivers Class Members are aggrieved and affected employees under the WARN Act in connection with Defendant's Mass Layoff. 29

U.S.C. § 2101(5); 29 C.F.R. § 639(e). McCarthy and the Gonzales and/or Three Rivers Class Members were employees of Defendant who did not receive the written notice required by 29 U.S.C. § 2102 and were reasonably expected by Defendant and/or should have been reasonably expected by Defendant to experience an employment loss as a result of Defendant's Mass Layoff made the subject matter of this lawsuit.

### 2.    Plant Closing

90.    Pleading in the alternative, and on information and belief, McCarthy and the Gonzales and/or Three Rivers Class Members were affected by a "Plant Closing." 29 C.F.R. §§639.3(b) & 639.5(a)(ii). "Plant Closing" means the "permanent or temporary shutdown of a 'single site of employment', or one or more 'facilities or operating units' within a single site of employment, if the shutdown results in an 'employment loss' during any 30-day period at the single site of employment for 50 or more employees, excluding any part-time employees." 29 C.F.R. § 639.3(b).

91.    McCarthy and the Gonzales and/or Three Rivers Class Members are aggrieved and affected employees under the WARN Act in connection with Defendant's Plant Closing. 29 U.S.C. § 2101(5); 29 C.F.R. § 639(e). McCarthy and the Gonzales and/or Three Rivers Class Members were employees of Defendant who did not receive the written notice required by 29 U.S.C. § 2102 and were reasonably expected by Defendant and/or should have been reasonably expected by Defendant to experience an employment loss as a result of Defendant's Plant Closing made the subject matter of this lawsuit.

### 3.    No Written Notice of Mass Layoff and/or Plant Closing

92.    McCarthy and the Gonzales and/or Three Rivers Class Members were not provided with 60 calendar days' advance written notice by Defendant of its planned/upcoming termination of employment, Mass Layoff and/or Plant Closing.

93.    McCarthy and the Gonzales and/or Three Rivers Class Members were not provided with any written notice by Defendant prior to their termination of employment, Mass Layoff and/or Plant Closing.

94.    McCarthy and the Gonzales and/or Three Rivers Class Members were not provided with written notice, at any time prior to their employment loss, of each and every of the following items in connection with their employment loss, Mass Layoff and/or Plant Closing: (a) A statement as to whether the planned action is expected to be permanent or temporary and, if the entire plant is to be closed, a statement to that effect;  (b) The expected date when the plant closing or mass layoff will commence and the expected date when the individual employee will be separated; (c) An indication whether or not bumping rights exist; (d) The name and telephone number of a company official to contact for further information.

95.    On information and belief, Defendant did not notify the Texas agency responsible for dislocated workers with the notice provisions required by 29 U.S.C. § 2102(a) and 29 C.F.R. § 639.7(e) in connection with the Mass Layoff and/or Plant Closing made the subject matter of this lawsuit.

96.    On information and belief, Defendant did not notify the Texas agency responsible for dislocated workers with the notice provisions required by 29 U.S.C. § 2102(a) and 29 C.F.R. § 639.7(e) in connection with the termination of the employment loss of McCarthy and the Class Members.

**4.    <u>Damages</u>**

97.     As a result of Defendant's violations of the WARN Act, McCarthy and the Gonzales and/or Three Rivers Class Members have suffered damages. McCarthy and the Gonzales and/or Three Rivers Class Members seek all damages available to them in connection with the claims set forth in this lawsuit, including 60 days' wages and benefits as provided by the WARN Act. 29 U.S.C. § 2104.

## B.     Quitman, Arkansas

### 1.  Mass Layoff

98.     During a 30 day or 90 day period from August 31, 2015, Defendant ordered/executed a "Mass Layoff" at the Quitman, Arkansas single site of employment as that term is defined by the WARN Act. 29 C.F.R. §§ 639.3(c) & 639.5(a)(i).

99.     Cross and the Quitman, Arkansas Class Members suffered an employment loss in connection with Defendant's "Mass Layoff" made the subject matter of this lawsuit. 29 C.F.R. § 639.3(f).

100.     On information and belief, 1/3 of the employees at the single site of employment made the subject matter of this lawsuit, totaling 50 or more employees, suffered an employment loss as a result of that Mass Layoff.

101.     Cross and the Quitman, Arkansas Class Members are aggrieved and affected employees under the WARN Act in connection with Defendant's Mass Layoff. 29 U.S.C. § 2101(5); 29 C.F.R. § 639(e). Cross and the Quitman, Arkansas Class Members were employees of Defendant who did not receive the written notice required by 29 U.S.C. § 2102 and were reasonably expected by Defendant and/or should have been reasonably expected by Defendant to experience an employment loss as a result of Defendant's Mass Layoff made the subject matter of this lawsuit.

5.      **Plant Closing**

102.    Pleading in the alternative, and on information and belief, Cross and the Quitman, Arkansas Class Members were affected by a "Plant Closing." 29 C.F.R. §§639.3(b) & 639.5(a)(ii). "Plant Closing" means the "permanent or temporary shutdown of a 'single site of employment', or one or more 'facilities or operating units' within a single site of employment, if the shutdown results in an 'employment loss' during any 30-day period at the single site of employment for 50 or more employees, excluding any part-time employees." 29 C.F.R. § 639.3(b).

103.    Cross and the Quitman, Arkansas  Class Members are aggrieved and affected employees under the WARN Act in connection with Defendant's Plant Closing. 29 U.S.C. § 2101(5); 29 C.F.R. § 639(e). Cross and the Quitman, Arkansas Class Members were employees of Defendant who did not receive the written notice required by 29 U.S.C. § 2102 and were reasonably expected by Defendant and/or should have been reasonably expected by Defendant to experience an employment loss as a result of Defendant's Plant Closing made the subject matter of this lawsuit.

6.      **No Written Notice of Mass Layoff and/or Plant Closing**

104.    Cross and the Quitman, Arkansas Class Members were not provided with 60 calendar days' advance written notice by Defendant of its planned/upcoming termination of employment, Mass Layoff and/or Plant Closing.

105.    Cross and the Quitman, Arkansas Class Members were not provided with any written notice by Defendant prior to their termination of employment, Mass Layoff and/or Plant Closing.

106.    Cross and the Quitman, Arkansas Class Members were not provided with written notice, at any time prior to their employment loss, of each and every of the following items in connection with their employment loss, Mass Layoff and/or Plant Closing: (a) A statement as to whether the planned action is expected to be permanent or temporary and, if the entire plant is to be closed, a statement to that effect;  (b) The expected date when the plant closing or mass layoff will commence and the expected date when the individual employee will be separated; (c) An indication whether or not bumping rights exist; (d) The name and telephone number of a company official to contact for further information.

107.    On information and belief, Defendant did not notify the Arkansas agency responsible for dislocated workers with the notice provisions required by 29 U.S.C. § 2102(a) and 29 C.F.R. § 639.7(e) in connection with the Mass Layoff and/or Plant Closing made the subject matter of this lawsuit.

108.    On information and belief, Defendant did not notify the Arkansas agency responsible for dislocated workers with the notice provisions required by 29 U.S.C. § 2102(a) and 29 C.F.R. § 639.7(e) in connection with the termination of the employment loss of Cross and the Quitman, Arkansas Class Members.

**7.    Damages**

109.    As a result of Defendant's violations of the WARN Act, Cross and the Quitman, Arkansas Class Members have suffered damages. Cross and the Quitman, Arkansas Class Members seek all damages available to them in connection with the claims set forth in this lawsuit, including 60 days' wages and benefits as provided by the WARN Act. 29 U.S.C. § 2104.

**V.    WARN CLASS ACTION ALLEGATIONS**

110.     Plaintiffs incorporate the preceding paragraphs by reference as if set forth fully in this section.

111.     Plaintiffs brings this action as a class action under Federal Rule of Civil Procedure 23(a), (b)(1) and (3) and the WARN Act 29 U.S.C. § 2104(a)(5).

**A.      Gonzales and/or Three Rivers, Texas**

112.     McCarthy brings this action on behalf of himself and all other similarly situated employees. McCarthy seeks to represent a Class initially defined as: "All of Defendant's employees working at/from/through its Gonzales, Texas and/or Three Rivers, Texas single site(s) of employment for its business operations who experienced an employment loss during the 30 or 90 day period from August 31, 2015 without 60 days' advance written notice required by the WARN Act." Plaintiffs request the opportunity to expand, narrow or modify the class definition pursuant to a motion for class certification and/or amended pleading to the extent discovery reveals that there is more than one single site of employment for Defendant's business operations.

113.     McCarthy and the Gonzales and/or Three Rivers, Texas Class Members are "affected employee(s)" subject to an "employment loss," as those terms are defined in the WARN Act at 29 U.S.C. § 2101(a)(5) and (6).

114.     McCarthy's claims satisfy the numerosity, commonality, typicality, adequacy, and superiority requirements of a class action.

115.     On information and belief, the Gonzales and/or Three Rivers, Texas Class Members exceed 50 in number, and joinder is therefore impracticable. The precise number of Gonzales and/or Three Rivers, Texas Class Members and their addresses are readily determinable from Defendant's records.

116.    There are common questions of fact and law as to the class that predominate over any questions affecting only individual class members. The questions of law and fact common to the class arising from Defendant's actions/omissions include, but are not limited to, the following:

    a.    Whether the provisions of the WARN Act apply;

    b.    Whether Defendant's employees at the Gonzales, Texas, and/or Three Rivers, Texas site(s) of employment for Defendant's short haul trucking support operations experienced an employment loss in connection with a "Mass Layoff" and/or "Plant Closing" under the WARN Act;

    c.    Whether Defendant failed to provide the notices required by the WARN Act;

    d.    Whether Defendant can avail itself of any provisions of the WARN Act permitting lesser periods of written notice; and

    e.    The appropriate method to calculate damages under the WARN Act.

117.    The questions above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness and equity, to other available methods for the fair and efficient adjudication of the WARN Act claims.

118.    A class action is the superior method for the fair and efficient adjudication of this controversy. Defendant has acted or refused to act on grounds generally applicable to the class. The presentation of separate actions by individual class members could create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendant, and/or substantially impair or impede the ability of class members to protect their interests.

119.    McCarthy is an affected former employee of Defendant who experienced an employment loss during the relevant 30 day and 90 day "look ahead" and "look behind" periods of the WARN Act, 20 C.F.R. § 639.5, without the required written notice. He is therefore a member of the class. McCarthy is committed to pursuing this action and has retained counsel with extensive experience in prosecuting complex wage, employment, and class action litigation. Accordingly, McCarthy is an adequate representative of the class and has the same interests as all of its members. Further, McCarthy's claims are typical of the claims of all members of the class, and McCarthy will fairly and adequately protect the interests of the absent members of the class. McCarthy and his counsel do not have claims or interests that are adverse to the Gonzales and/or Three Rivers, Texas Class Members.

120.    Further, class action treatment of this lawsuit is authorized and appropriate under the WARN Act 29 U.S.C. § 2104(a)(5), which clearly provides that a plaintiff seeking to enforce liabilities under the Act may sue either on his or her behalf, for other persons similarly situated, or both.

**B.      Quitman, Arkansas**

121.    Cross brings this action on behalf of himself and all other similarly situated employees. Cross seeks to represent a Class initially defined as: "All of Defendant's employees working at/from/through its Quitman, Arkansas single site of employment for its business operations who experienced an employment loss during the 30 or 90 day period from August 31, 2015 without 60 days' advance written notice required by the WARN Act." Plaintiffs requests the opportunity to expand, narrow or modify the class definition pursuant to a motion for class certification and/or amended pleading to the extent discovery reveals that there is more than one single site of employment for Defendant's business operations.

122.    Cross and the Quitman, Arkansas Class Members are "affected employee(s)" subject to an "employment loss," as those terms are defined in the WARN Act at 29 U.S.C. § 2101(a)(5) and (6).

123.    Cross's claims satisfy the numerosity, commonality, typicality, adequacy, and superiority requirements of a class action.

124.    On information and belief, the Quitman, Arkansas Class Members exceed 50 in number, and joinder is therefore impracticable. The precise number of Quitman, Arkansas Class Members and their addresses are readily determinable from Defendant's records.

125.    There are common questions of fact and law as to the class that predominate over any questions affecting only individual class members. The questions of law and fact common to the class arising from Defendant's actions/omissions include, but are not limited to, the following:

  a.    Whether the provisions of the WARN Act apply;

  b.    Whether Defendant's employees at the Quitman, Arkansas site of employment for Defendant's short haul trucking support operations experienced an employment loss in connection with a "Mass Layoff" and/or "Plant Closing" under the WARN Act;

  c.    Whether Defendant failed to provide the notices required by the WARN Act;

  d.    Whether Defendant can avail itself of any provisions of the WARN Act permitting lesser periods of written notice; and

  e.    The appropriate method to calculate damages under the WARN Act.

126.    The questions above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy,

efficiency, fairness and equity, to other available methods for the fair and efficient adjudication of the WARN Act claims.

127.     A class action is the superior method for the fair and efficient adjudication of this controversy. Defendant has acted or refused to act on grounds generally applicable to the class. The presentation of separate actions by individual class members could create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendant, and/or substantially impair or impede the ability of class members to protect their interests.

128.     Cross is an affected former employee of Defendant who experienced an employment loss during the relevant 30 day and 90 day "look ahead" and "look behind" periods of the WARN Act, 20 C.F.R. § 639.5, without the required written notice. He is therefore a member of the class. Cross is committed to pursuing this action and has retained counsel with extensive experience in prosecuting complex wage, employment, and class action litigation. Accordingly, Cross is an adequate representative of the class and has the same interests as all of its members. Further, Cross's claims are typical of the claims of all members of the class, and Cross will fairly and adequately protect the interests of the absent members of the class. Cross and his counsel do not have claims or interests that are adverse to the Quitman, Arkansas Class Members.

129.     Further, class action treatment of this lawsuit is authorized and appropriate under the WARN Act 29 U.S.C. § 2104(a)(5), which clearly provides that a plaintiff seeking to enforce liabilities under the Act may sue either on his or her behalf, for other persons similarly situated, or both.

## VI.    SECOND CLAIM FOR RELIEF: FLSA CLAIM

130.    Plaintiffs incorporate the preceding paragraphs by reference as if set forth fully in this section.

A.    **Controlling Legal Rules**

131.    The FLSA generally requires that an employer employing an employee for a workweek exceeding 40 hours must compensate the employee for hours worked over 40 "at a rate not less than one and one-half times the regular rate of pay." 29 U.S.C. § 207(a)(1).

132.    "Employ" includes to suffer or permit work. 29 U.S.C. § 203(g).

133.    "[I]t is the duty of the management to exercise its control and see that the work is not performed if it does not want it to be performed. It cannot sit back and accept the benefits without compensating for them. The mere promulgation of a rule against such work is not enough. Management has the power to enforce the rule and must make every effort to do so." 29 C.F.R. § 785.13; *accord Newton v. City of Henderson*, 47 F.3d 746, 748 (5th Cir. 1995) (same).

134.    Federal law requires employers to make and keep accurate and detailed payroll data for non-exempt employees. 29 U.S.C. § 211(c); 29 C.F.R. § 516.2. Amongst other things, the regulations require employers to make and keep payroll records showing data such as the employee's name, social security number, occupation, time of day and day of week which the workweek begins, regular hourly rate of pay for any week in which overtime pay is due, hours worked each workday and total hours worked each workweek, total daily or weekly straight time earnings, total premium pay for overtime hours, total wages paid each pay period and date of payment and pay period covered by the payment, and records of remedial payments. 29 C.F.R. § 516.2(a)&(b). Employers are required to maintain the foregoing data for a minimum of three years. 29 C.F.R. § 516.5.

135.   The FLSA defines the "regular rate" as including "all remuneration for employment paid to, or on behalf of, the employee … ." 29 U.S.C. § 207(e).

136.   Failing to pay the required overtime premium for hours worked over 40 in a workweek is a violation of the FLSA. 29 U.S.C. § 216.

137.   "Any employer who violates the provisions of section 206 or section 207 of [the FLSA] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. Any employer who violates the provisions of section 215 (a)(3) of this title shall be liable for such legal or equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3) of this title, including without limitation employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages." 29 U.S.C. § 216(b).

### B.   **Plaintiffs' Contentions**

138.   At relevant times, Defendant is/was an eligible and covered employer under the FLSA. 29 U.S.C. § 203(d).

139.   All conditions precedent to this suit, if any, have been fulfilled.

140.   At relevant times, Defendant is/was an eligible and covered employer of Plaintiffs and the Collective Action Members under the FLSA. 29 U.S.C. § 203(d).

141.   At relevant times, Defendant is/has been an enterprise engaged in commerce under the FLSA. 29 U.S.C. § 203(s)(1)(A).

142.   Plaintiffs and putative Collective Action Members are/were employees of Defendant pursuant to the FLSA. 29 U.S.C. § 203(e).

143.    Plaintiffs and putative Collective Action Members regularly work/worked in excess of 40 hours per seven-day workweek as employees of Defendant during the time period relevant to this lawsuit.

144.    Defendant is/was required to pay Plaintiffs and putative Collective Action Members time and one-half their respective regular rates of pay for all hours worked over 40 in a seven day workweek. 29 U.S.C. § 207(a)(1).

145.    Defendant failed to pay Plaintiffs and putative Collective Action Members overtime compensation at one and one-half times their respective regular rates of pay for all hours worked over 40 in each and every seven-day workweek during the time period relevant to this lawsuit.

146.    Defendant does not/did not pay Plaintiffs and the putative Collective Action Members compensation for all hours worked in a workweek, at least $7.25 for each hour worked in a workweek and/or at least $7.25 for each and every hour worked once dividing each Plaintiff's and putative Collective Action Member's total pay in a workweek by total hours worked in that same workweek.

147.    Defendant did not make and keep an accurate record of all hours worked by Plaintiffs and putative Collective Action Members as required by the FLSA. 29 U.S.C. § 211(c); 29 C.F.R. § 516.2. Namely, Defendant did not make and keep a record of the exact number of hours worked by Plaintiffs and the putative Collective Action Members each day and each workweek.

148.    The putative Collective Action Members are/were similarly situated to Plaintiffs and to each other under the FLSA. 29 U.S.C. § 203(e).

149.    Defendant's violations of the FLSA are/were willful within the meaning of 29 U.S.C. § 255(a). For example, and as described above, Defendant required, permitted, and/or encouraged underpayment of actual hours worked by Plaintiffs and putative Collective Action Members. Defendant is and was aware that Plaintiffs and putative Collective Action Members were not paid overtime premium compensation for all hours worked over 40 in a workweek. Defendant is and was aware that Plaintiffs and putative Collective Action Members were not paid the FLSA mandated minimum hourly wage rate for all hours worked in a workweek.

150.    Plaintiffs and putative Collective Action Members plead recovery for the time period of three years preceding the date this lawsuit was filed and forward for their FLSA claims.

151.    Plaintiffs and the putative Collective Action Members seek all damages available for Defendant's failure to timely pay all overtime wages owed.

## VII.    FLSA COLLECTIVE ACTION ALLEGATIONS

152.    Plaintiffs incorporate the preceding paragraphs by reference as if set forth fully in this section.

153.    Where, as here, the employer's actions or policies were effectuated on a companywide basis, notice may be sent to all similarly situated persons on a companywide basis. *See Ryan v. Staff Care, Inc.*, 497 F. Supp. 2d 820, 825 (N.D. Tex. 2007) (certifying nationwide collective action in FLSA case); *see also*, *Jones v. SuperMedia Inc.,* 281 F.R.D. 282, 290 (N.D. Tex. 2012) (same).

154.    Plaintiffs seeks to represent a collective action under 29 U.S.C. § 216(b) on behalf of themselves and all current and former oilfield short haul trucking crew workers and support staff employees who are/were employed by Defendant and who are/were not paid: a) time and

one-half their regular rates of pay for all hours worked over 40 during each seven day workweek; and/or (b) at least the FLSA mandated minimum wage rate for all hours worked in a workweek.

155.    The relevant time period for this collective action is three years preceding the date this lawsuit was filed and forward, or such other time period deemed appropriate by the Court.

156.    Plaintiffs reserve the right to establish sub-classes and/or modify class notice language as appropriate in any collective action certification motion or other proceeding.

157.    Plaintiffs further reserve the right to amend the definition of the putative class, or sub classes therein, if discovery and further investigation reveal that the putative class should be expanded or otherwise modified.

## VIII.   JURY DEMAND

158.    Plaintiffs requests a trial by jury with respect to all claims.

## IX.      DAMAGES AND PRAYER

159.    Plaintiffs, individually and on behalf of all other similarly situated persons, pray for the following relief as against Defendant:

**WARN Act Claim(s)**

    a.    An order certifying that the WARN Act claim(s) may be maintained as a Rule 23 class action/class actions;

    b.    Designation of Plaintiffs as Class/Sub-Class Representatives;

    c.    Appointment of Allen R. Vaught, Baron & Budd, P.C., as Class Counsel;

    d.    All judgment in favor of the Plaintiffs and each of the "affected employees" equal to the sum of: their unpaid wages, salary, bonuses, accrued holiday pay, accrued vacation pay, pension and 401(k) contributions and other benefits, for 60 days, that would have been covered and paid under the then-applicable employee benefit plans had that coverage continued for that period, all determined in accordance with the WARN Act, 29 U.S.C. § 2104(a)(1)(4);

e.      Pre-judgment and post-judgment interest as allowed by law on the amounts owed under the preceding paragraph;

f.      Plaintiffs' reasonable attorneys' fees and the costs and disbursements that the Plaintiffs incurred in prosecuting this action; and

g.      All other relief to which Plaintiffs and the WARN Class Members are entitled.

**FLSA Claims**

a.      An order conditionally certifying the FLSA Claims as a FLSA collective action and requiring notice to be issued to all putative collective action members;

b.      All damages allowed by the FLSA, including back overtime wages;

c.      Liquidated damages in an amount equal to back FLSA mandated wages;

d.      Legal fees;

e.      Costs;

f.      Post-judgment interest; and

g.      All other relief to which Plaintiffs and the FLSA Collective Action Members are entitled.

Respectfully submitted,

By:     s/ Allen R. Vaught
        Allen R. Vaught
        TX Bar No. 24004966
        BARON & BUDD, P.C.
        3102 Oak Lawn Avenue, Suite 1100
        Dallas, Texas  75219
        (214) 521-3605 – Telephone
        (214) 520-1181 – Facsimile
        avaught@baronbudd.com

By:     /s/ Glenn D. Levy
        Glenn D. Levy
        Texas Bar No. 12264925
        LAW OFFICE OF GLENN D. LEVY
        906 Basse, Suite 100
        San Antonio, TX  78212

Tel.: (210) 822-5666
Fax:  (210) 822-5650
glenn@glennlevylaw.com

ATTORNEYS FOR PLAINTIFFS